IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED IN OPEN COURT

NOV - 6 2020

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:20-CR-251 |
| v. ) | |
| ) | Counts 1 – 7: 18 U.S.C. § 1343 |
| ARTHUR PENN, ) | (Wire Fraud) |
| ) | |
| Defendant. ) | Forfeiture Notice |

## INDICTMENT

November 2020 Term - at Alexandria, Virginia

## COUNTS 1 – 7

(Wire Fraud)

THE GRAND JURY CHARGES THAT:

### Introductory Allegations

At all times material to this Indictment, unless otherwise specified below:

1. Defendant ARTHUR PENN (hereinafter "PENN" or "Defendant") resided in Quantico and Fredericksburg, Virginia, both within the Eastern District of Virginia.

2. Beginning no later than in or about 1997, and continuing through in or about 2015, PENN was employed as a police officer with the Defense Protective Service, subsequently known as the Pentagon Force Protection Agency.

3. The Fraternal Order of Police, D.C. Lodge 1, Defense Protective Service Labor Committee, Inc., also known as the Fraternal Order of Police Defense Protective Service Labor Committee Pentagon (hereinafter, "the FOP DPS Union") was a local union formed in or about

1

1999 to represent the interests of law enforcement officers employed by the Defense Protective Service, subsequently known as the Pentagon Force Protection Agency.

4. Members of the FOP DPS Union regularly paid dues to fund the operations of the Union. Dues typically were withheld from members' pay on a bi-weekly basis, and paid over via the Defense Financial Accounting System ("DFAS") into one of several accounts held by the FOP DPS Union at Bank of America, N.A.

5. The FOP DPS Union's constitution established several elected officers who would be responsible for managing the Union's affairs and representing the interests of the Union and its members. Among other positions, the FOP DPS Union's constitution established the position of "Chairman" who served as "the Chief Executive Officer of the Union."

6. Beginning no later than 1999, and continuing through at least 2015, defendant PENN served as the Chairman of the FOP DPS Union.

7. By virtue of his position as Chairman, PENN owed fiduciary duties to the FOP DPS Union and its members. PENN's fiduciary duties included, among other things, the duty to refrain from using the FOP DPS Union's money for his own private purposes, and the duty to disclose financial transactions involving FOP DPS Union funds to the Union and its members.

8. The FOP DPS Union's constitution provided, among other things, that "[t]he Chairman shall have the authority, when countersigned by the Treasurer and Secretary, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Union funds for the prompt payment of all lawful obligations of the Union." The FOP DPS Union's constitution and by-laws did not authorize cash withdrawals from its bank accounts, and did not authorize Union officers to expend Union funds for their personal benefit.

9.  The FOP DPS Union's constitution required Union officers, including PENN as the Chairman, to hold meetings at least once each month. At each meeting, the constitution required PENN, as Chairman, to "submit a complete and comprehensive report of the official business transacted by him subsequent to the last meeting . . . ."

10. Federal law required PENN, as a principal officer of the FOP DPS Union, annually to file a financial report with the Office of Labor-Management Standards that accurately disclosed the Union's financial condition and operations for the preceding fiscal year. This annual financial report required PENN to disclose, among other things, any and all salary payments, allowances, or other disbursements of FOP DPS Union funds to any officer of the Union.

11. Federal law further required PENN, as a principal officer of the FOP DPS Union, to maintain records on the matters required to be reported to the Office of Labor-Management Standards, which records were required to provide in sufficient detail the necessary basic information and data from which the documents filed with the Office of Labor-Management Standards could be verified, explained, or clarified, and checked for accuracy and completeness. Federal law required that PENN keep these records available for examination for a period of not less than five years after the filing of the documents based on the information which they contain.

12. Federal law further required PENN, as a principal officer of the FOP DPS Union, to make available to all members of the FOP DPS Union the information required to be contained in the annual financial reports filed with the Office of Labor-Management Standards. Federal law further imposed upon PENN the duty to permit any member of the FOP DPS Union

for just cause to examine any books, records, and accounts necessary to verify the annual financial reports filed with the Office of Labor-Management Standards.

13.     The Office of Labor-Management Standards maintained a website whereby members of the public could search for and review the contents of annual financial reports filed on behalf of unions, including any annual financial reports filed on behalf of the FOP DPS Union.

14.     In his role as Chairman, PENN had access to and control over the financial accounts of the FOP DPS Union maintained at Bank of America, N.A., and the funds held in those accounts.

15.     Notwithstanding that the FOP DPS Union's constitution permitted the withdrawal of Union funds only by way of checks, drafts, or money orders, and only then with the counter-signature of three Union officers, PENN held a debit card linked to the Union's accounts at Bank of America, N.A. This debit card enabled PENN unilaterally to conduct debit-card transactions and to withdraw funds from the FOP DPS Union's accounts in cash at automated teller machines ("ATMs").

### Scheme And Artifice To Defraud

16.     Beginning no later than in or about 2010, and continuing through at least in or about 2015, in the Eastern District of Virginia and elsewhere, defendant ARTHUR PENN, and others known and unknown to the grand jury, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

### Purpose and Object of the Scheme

17. It was the purpose and object of the scheme for PENN to obtain money and property rightfully belonging to the FOP DPS Union and its members through embezzlement, that is, the fraudulent appropriation to PENN's own use of money entrusted to his care by the FOP DPS Union and its members.

### Manner and Means of the Scheme

18. In furtherance of the scheme to defraud, and to accomplish its unlawful objects, the following manner and means were used, among others:

19. PENN routinely embezzled money rightfully belonging to the FOP DPS Union, and fraudulently converted that money to his own use unrelated to any legitimate Union business or expenditure. Among other things, PENN embezzled funds from the FOP DPS Union for the following personal uses:

   a. to pay for leisure travel to, and personal expenditures while vacationing in, the Dominican Republic;

   b. to pay to fund his personal gambling at casinos, including at the Hollywood Casino at Charles Town Races, in Charles Town, West Virginia;

   c. to pay for PENN's ordinary day-to-day living expenses, unrelated to any legitimate Union business or expenditure.

20. PENN embezzled money from the FOP DPS Union primarily by withdrawing funds from the Union's accounts in cash. In so doing, PENN avoided the creation of written records regarding these financial transactions, and concealed their true nature as expenditures that benefitted him personally.

21. PENN breached the duties imposed on him as a fiduciary of the FOP DPS Union to refrain from spending the Union's funds for his own private benefit.

22. PENN breached the duties imposed on him as a fiduciary of the FOP DPS Union to disclose financial transactions involving FOP DPS Union funds to the Union and its members, thereby concealing the scheme to defraud and facts that would lead to its discovery.

23. PENN breached the duties imposed on him by the constitution and by-laws of the FOP DPS Union to use Union funds only to pay for the lawful obligations of the Union, to conduct such financial transactions only by check, draft, or money order, and to do so only with the co-signature of the Union's Treasurer and Secretary. In so doing, PENN concealed the existence of the scheme to defraud and facts that would lead to its discovery.

24. PENN breached the duties imposed on him by the constitution and by-laws of the FOP DPS Union to hold regular Union meetings, and to "submit a complete and comprehensive report" at each meeting "of the official business transacted by him subsequent to the last meeting." By breaching these duties, PENN concealed the scheme to defraud and facts that would lead to its discovery.

25. PENN breached the duties imposed on him by federal law to file annual financial reports with the Office of Labor-Management Standards that accurately disclosed the Union's financial condition and operations, including the disclosure of all disbursements of Union funds to himself. PENN further breached the duties imposed on him by federal law to make all information required to be contained in annual financial reports available to Union members, to maintain detailed records on the matters required to be reported to the Office of Labor-Management Standards, and to make these records available for inspection by any Union

member for just cause. By breaching these duties, PENN concealed the scheme to defraud and facts that would lead to its discovery.

## Use Of Interstate Wires

26. On or about the dates listed below, for the purpose of executing the above-described scheme and artifice, in the Eastern District of Virginia and elsewhere, ARTHUR PENN, defendant herein, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, as described below:

| Count | Approx. Date | Summary Description |
|---|---|---|
| 1 | 4/17/2015 | electronic communication between an ATM located in the Eastern District of Virginia and a data center located outside of Virginia, to authorize the withdrawal of approximately $600 from an FOP DPS Union account held at Bank of America, N.A. |
| 2 | 4/24/2015 | electronic communication between an ATM located in the Eastern District of Virginia and a data center located outside of Virginia, to authorize the withdrawal of approximately $200 from an FOP DPS Union account held at Bank of America, N.A. |
| 3 | 5/15/2015 | electronic communication between an ATM located in the Eastern District of Virginia and a data center located outside of Virginia, to authorize the withdrawal of approximately $200 from an FOP DPS Union account held at Bank of America, N.A. |
| 4 | 7/24/2015 | electronic communication between an ATM located in the Eastern District of Virginia and a data center located outside of Virginia, to authorize the withdrawal of approximately $400 from an FOP DPS Union account held at Bank of America, N.A. |
| 5 | 8/4/2015 | electronic communication between an ATM located in the Eastern District of Virginia and a data center located outside of Virginia, to authorize the withdrawal of approximately $200 from an FOP DPS Union account held at Bank of America, N.A. |
| 6 | 8/20/2015 | electronic communication between an ATM located in the Eastern District of Virginia and a data center located outside of Virginia, to authorize the withdrawal of approximately $300 from an FOP DPS Union account held at Bank of America, N.A. |

| Count | Approx. Date | Summary Description |
|---|---|---|
| 7 | 9/1/2015 | electronic communication between an ATM located in the Eastern District of Virginia and a data center located outside of Virginia, to authorize the withdrawal of approximately $200 from an FOP DPS Union account held at Bank of America, N.A. |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT THE PROPERTY DESCRIBED BELOW IS SUBJECT TO FORFEITURE:

27. Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant ARTHUR PENN is hereby notified that, if convicted of an offense alleged in Counts 1 through 7 of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), his interest in any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as the result of the Counts of conviction.

28. If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

29. The property subject to forfeiture includes, but is not limited to the following:

    a. A sum of money equal to at least $384,001.88 in United States currency, representing the amount of proceeds obtained as a result of the offenses.

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

G. Zachary Terwilliger
United States Attorney

By: *[signature]*
Matthew Burke
Assistant United States Attorney

A TRUE BILL

○ Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

FOREPERSON OF THE GRAND JURY